**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VANESSA RODRIGUEZ, MANUAL CAMACHO, DIMITRI DEJESUS, a Minor, by and through his mother VANESSA RODRIGUEZ. | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) No. 2016-cv-5106<br>)<br>) Judge |
| vs. | ) Magistrate Judge<br>) |
| CITY OF BERWYN,<br>Berwyn Police Officers<br>KARLAS ROBINZINE, Star No. 205,<br>ROBERT ARNONY, Star No. 218,<br>TIMOTHY KESKE, Star No. 200,<br>JIM RITZ, Chief of Police, | )<br>)<br>)<br>)<br>)<br>) JURY DEMAND |
| Defendants. | )<br>) |

## COMPLAINT

NOW COMES, the Plaintiffs, VANESSA RODRIGUEZ and MANUEL CAMACHO, by and through their counsel, DELANEY LAW, P.C., and pursuant to this Complaint at Law, states the following against the above named Defendants, to wit, CITY OF BERWYN and its Police Officers, DETECTIVE KARLAS ROBINZINE, Star No. 205, DETECTIVE ROBERT ARNONY, Star No. 218, OFFICER TIMOTHY KESKE, Star No. 200, and CHIEF OF POLICE JIM RITZ:

### INTRODUCTION

1. This case arises from a multi-year campaign of harassment, oppression and discrimination engaged against Plaintiffs by the Defendant-Officers and spearheaded by Detective ROBINZINE.

2. Detective ROBINZINE carried forth this crusade pursuant a conspiracy between the Berwyn Police Department and Margarita "Rubia" Rodriguez, ROBINZINE's mistress, who both, for one reason or another, wanted to injure and get vengeance against Plaintiffs.

3. Upon information and belief, to further his sexual interests, maintain his relationship with Rubia, and conceal the extra-marital affair from his wife, ROBINZINE utilized his position of authority to devote Berwyn Police resources, including Berwyn Police officers, towards the campaign of harassment, oppression and discrimination against Plaintiffs.

4. Such harassment, oppression and discrimination included and still includes, without limitation, conducting around the clock surveillance of Plaintiffs' residence, stalking Plaintiffs while outside the residence and on roadways, issuing bogus parking tickets to Plaintiffs, inducing the filing, pursuit and prosecution of false police report and/or criminal complaints and other litigation directed against Plaintiffs and taking affirmative actions to have Plaintiffs arrested without probable cause or warrant.

5. ROBINZINE ultimately succeeded in unlawfully arresting the Plaintiffs.

## JURISDICTION

6. The jurisdiction of the Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983, the Judicial Code, 28 U.S.C. § 1331, the Constitution of the United States; and this Court's supplementary jurisdiction powers pursuant 28 U.S.C. § 1376.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that the claims arose in this district as alleged below.

## PARTIES

8. Plaintiffs VANESSA RODRIGUEZ and MANUEL CAMACHO live together as boyfriend and girlfriend and were at all relevant times residents of the City of Berwyn in Cook County, State of Illinois. Plaintiff DIMITRI DEJESUS is VANESSA RODRIGUEZ's Son, and also lives with VANESSA RODRIGUEZ and MANUAL CAMACHO.

9. Defendant-Officers ROBINZINE, ARNONY, and KESKE are duly appointed and sworn Berwyn police officers. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation. As duly appointed Chief of Police, RITZ maintains a position of authority over the Defendant-Officers and responsible for, under State law and municipal practice of the CITY OF BERWYN, to formulate and oversee policies, practices, and customs of the Berwyn Police and for the hiring, screening, training, and supervision of police officers at the department.

10. The Defendant-Officers and Chief of Police are sued in their individual capacities.

11. Defendant CITY OF BERWYN is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers and Chief of Police.

## FACTS

12. In or about 2010, ROBINZINE began an extra-marital affair with Rubia.

13. During the course of the extra-marital affair, and to further his sexual interests, ROBINZINE convinced Rubia that he loves her, that he does not love his wife and that he will eventually leave his wife for her.

14. The two exchanged numerous text messages to that effect as well as numerous lewd and lascivious text messages and photographs. See photographs of Robinzine and his mistress, attached hereto as **Exhibit A.**

15. Upon information and belief, ROBINZINE hatched a scheme to have Plaintiffs arrested and manipulated his mistress into believing that he and she would be together after Plaintiffs were out of the picture. *See* text messages between Robinzine and his Mistress, attached hereto as **Exhibit B** ("you said you and your wife have nothing in common anymore… why are you staying there[,] be with me[,] love me[,] let's make a life together[.]"

16. Upon information and belief, Rubia, believing that ROBINZINE loved her and would leave his wife for her, agreed to participate in the scheme. Id.

17. Specifically, ROBINZINE induced Rubia to make false statements to the police at ROBINZINE's direction. **Id**. ("Robinzine: Don't worry about the statement Rubia your [sic] very smart" Rubia: "Trust me I do not know how to make statement it does not come out of my mouth you don't know me?  yes I am smart but when it comes to paperwork of giving a statement itself not come out right to me" [sic]).

18. Upon information and belief, ROBINZINE enlisted the help of ARNONY to participate in the scheme as investigating detective.

19. Upon information and belief, ARNONY knew that ROBINZINE was involved in an extra-marital affair with Rubia and agreed to go along with ROBINZINE's scheme to "get rid of" Plaintiffs.

20. In February 2014, pursuant ROBINZINE's scheme and direction, Rubia filed a bogus criminal complaint against Plaintiffs alleging Plaintiffs had burglarized her home.

21. Plaintiffs did not burglarize Rubia's home.

22. During the burglary investigation, Rubia reported to ARNONY that Plaintiff VANESSA had also forged Rubia's signature on paperwork filed with the Illinois Secretary of State regarding a transfer of title for a 2005 Pontiac Vibe, (the "Pontiac Vibe") a vehicle held in both Plaintiff VANESSA and Rubia's names.

23. ARNONY then met with Illinois Secretary of State Police to relay the alleged forgery and open an investigation.

24. Plaintiff VANESSA did not forge Rubia's signature on any paperwork filed with the Illinois Secretary of State.

25. ARNONY continued to investigate Plaintiffs for the alleged burglary of Rubia's home but no arrests were made.

26. Upon information and belief, ROBINZINE, frustrated by the lack of an arrest, then induced Berwyn Police Officers to stalk and intimidate Plaintiffs, follow them to and from work and monitor Plaintiffs' residence at all hours of the day and night, as well as issue bogus parking tickets to Plaintiffs.

27. In July 2014, pursuant ROBINZINE's scheme and direction, Rubia filed another bogus criminal complaint against Plaintiffs for alleged criminal damage to property. Rubia alleged that Plaintiffs used a landscape brick to break both side mirrors of her vehicle.

28. Plaintiffs did not cause any criminal damage to Rubia's vehicle.

29. Berwyn Police investigated the complaint and went to Plaintiffs' home immediately after the incident for questioning but made no arrest. At the time, Rubia was the only person to have witnessed the alleged property damage.

30. In late October and/or early November 2014, ROBINZINE and his mistress, Rubia, engaged exchanged numerous text messages regarding the ongoing criminal damage to property investigation and their underlying scheme to arrest Plaintiffs. *See* **Ex. B**.

31. In such text messages, ROBINZINE and Rubia discuss "getting rid of" Plaintiffs and state "Lets do this lets get [Plaintiffs] in jail let's take the down? stress out of me what they're doing to me once they're out of the picture then we work on me and you getting together and you growing balls?" (sic) **Id**.

32. Furthermore, the two discuss "getting rid of [Plaintiffs] get them out of [our] way" so they can "start whatever comes next." **Id**.

33. In the texts ROBINZINE confirms that he and ARNONY are working to have Plaintiffs arrested. **Id**. Specifically, ROBINZINE states that "Arnony is going to arrest camacho [sic] and let the court handle the rest" and "camacho [sic] will be arrested soon. Ok." **Id**.

34. On November 13 2014, ARNONY contacted Plaintiffs and insisted that Plaintiffs come to the Berwyn police station to discuss the criminal damage to property case.

35. On November 14, 2014, Plaintiffs, through counsel, called the Berwyn Police Station to speak with ARNONY and left a message. Moments later, ARNONY called back on his cell phone stating that he had the day off work but was able to discuss the matter.

36. Plaintiffs' counsel and ARNONY discussed the alleged criminal damage to property and ARNONY stated that a new witness had come forward, a man named Herbert Arocha that lives with Rubia. ARNONY could not explain why this witness did not come forward earlier even though he lives with Rubia and allegedly witnessed the incident.

37. Plaintiffs' counsel instructed ARNONY not to contact Plaintiffs any further and that, if Rubia wishes to proceed with her complaint for criminal damage to property and there is

probable cause or warrant to arrest, Plaintiffs will come to the station on their own recognizance represented by counsel. ARNONY agreed.

38. However, despite having been advised of Plaintiffs' willingness to come to the station on their own recognizance, ARNONY created and posted an Investigative Alert Flyer at the Berwyn Police station alleging that "probable cause to detain" exists with regards to Plaintiff Camacho.

39. No probable cause to detain or arrest Plaintiff Camacho existed.

40. On January 5, 2015, Plaintiffs discovered that the license plate on the Pontiac Vibe had been removed and called the Berwyn Police. Plaintiffs would later discover that the Illinois Secretary of State Police removed the license plate from the Pontiac Vibe as a result of the alleged forgery ARNONY caused to be investigated.

41. KESKE arrived at Plaintiffs' residence and shortly thereafter Plaintiff CAMACHO told him that the license plate on the Pontiac Vibe had been stolen.

42. Upon information and belief, ROBINZINE and/or ARNONY enlisted the help of KESKE to participate in the scheme.

43. Upon information and belief, KESKE knew that ROBINZINE was involved in an extra-marital affair with Rubia and agreed to go along with ROBINZINE's scheme to harass, oppress and discriminate against Plaintiffs.

44. KESKE interviewed Plaintiff CAMACHO at the scene and then radioed Lisa Coleman at the Berwyn Police station to inquire about Plaintiff CAMACHO.

45. KESKE was advised that (1) Plaintiff CAMACHO has no outstanding warrants in Berwyn; (2) Plaintiff CAMACHO was not wanted by Berwyn Police; and (3) Plaintiff CAMACHO has no outstanding warrants in any surrounding townships.

46. Nevertheless, KESKE informed Lisa Coleman that he intended to arrest Plaintiff CAMACHO, radioed additional police units to help him effectuate the arrest, and, upon information and belief, contacted ARNONY as well.

47. KESKE did not have probable cause to arrest Plaintiff CAMACHO.

48. KESKE moved towards Plaintiff CAMACHO, who was inside the foyer of his residence, and told Plaintiff Camacho that we have "another matter" from ARNONY.

49. At this point, Plaintiff DIMITRI and Plaintiff RODRIGUEZ were standing inside the house watching the interaction between Plaintiff CAMACHO and KESKE.

50. Plaintiff Camacho then told KESKE that he has some paperwork for ARNONY and that he would retrieve it from inside his residence. Camacho then turned to retrieve said paperwork.

51. At no point had KESKE told Plaintiff Camacho that he was under arrest.

52. KESKE then forced his way into the foyer, seized and yanked Plaintiff Camacho's arm, tackled him to the ground, put his knee in Plaintiff's back, forced his head down and repeatedly told him to "stop resisting".

53. There was no search or arrest warrant for Plaintiff Camacho at the time of his arrest and KESKE's forced entry into the residence.

54. After having Plaintiff Camacho arrested, KESKE then forcefully seized Plaintiff VANESSA and arrested her.

55. There was no search or arrest warrant for Plaintiff Rodriguez at the time of her arrest and KESKE's forced entry into the residence.

56. KESKE then seized Plaintiff DIMITRI and took him into custody.

## COUNT I
(Equal Protection – Class of One – 42 U.S.C. § 1983)

57. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

58. The Defendant-Officers intentionally treated Plaintiffs differently than others similarly situated.

59. There was no rational basis for the difference in treatment.

60. The Defendant-Officers were motivated by illegitimate animus against the Plaintiffs.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against the individual Defendants KARLAS ROBINZINE, ROBERT ARNONY, and TIMOTHY KESKE;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT II
(Substantive Due Process, Egregious Abuse of Power & Campaign of Unlawful Harassment, Oppression and Discrimination– 42 U.S.C. § 1983)

61. Plaintiff reallage Paragraphs 1 through 56 as if fully set forth herein.

62. The Defendant-Officers engaged in a multi-year campaign of harassment, oppression and discrimination which includes, without limitation, around the clock surveillance of Plaintiffs' residence, stalking Plaintiffs while outside the residence and on roadways, causing numerous bogus parking tickets to be issued to Plaintiffs, inducing the filing, pursuit and prosecution of false police reports and/or criminal complaints against Plaintiffs, taking affirmative actions to have Plaintiffs arrested without probable cause or warrant, as well as other acts of intimidation.

63. The Defendant-Officers conduct was an egregious and arbitrary abuse of government power that shocks the conscience.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against the individual Defendants KARLAS ROBINZINE, ROBERT ARNONY, and TIMOTHY KESKE;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## **COUNT III**
(Civil Conspiracy – 42 U.S.C. § 1983)

64. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

65. The Defendant-Officers acted in concert pursuant to an agreement to deprive Plaintiffs of their constitutional and civil rights.

66. The Defendant-Officers conspired and acted together to harass and oppress Plaintiffs by engaging in around the clock surveillance of Plaintiffs' residence, stalking Plaintiffs while outside the residence and on roadways, issuing numerous bogus parking tickets to Plaintiffs, inducing the filing, pursuit and prosecution of false police reports and/or criminal complaints against Plaintiffs, taking affirmative actions to have Plaintiffs arrested without probable cause or warrant, as well as other acts of intimidation.

67. The Defendant-Officers conspired and acted together to have Plaintiffs unlawfully arrested in violation of Plaintiffs' constitutional and civil rights and in deprivation of the privileges, rights, and immunities guaranteed to Plaintiffs by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

68. The Defendant-Officers knowingly and intentionally schemed and worked together in a common plan to harass and oppress Plaintiffs as set forth above and deprive Plaintiffs of their constitutional and civil rights.

69. Plaintiffs suffered harm and injury as a result of Defendants' conspiracy to harass and oppress Plaintiffs and deprive them of their constitutional and civil rights.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against the individual Defendants KARLAS ROBINZINE, ROBERT ARNONY, and TIMOTHY KESKE;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IV
(Civil Conspiracy – State Law)

70. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

71. The Defendant-Officers acted in concert pursuant to an agreement to deprive Plaintiffs of their constitutional and civil rights.

72. The Defendant-Officers conspired and acted together to harass and oppress Plaintiffs by engaging in around the clock surveillance of Plaintiffs' residence, stalking Plaintiffs while outside the residence and on roadways, issuing numerous bogus parking tickets to Plaintiffs, inducing the filing, pursuit and prosecution of false police reports and/or criminal complaints against Plaintiffs, taking affirmative actions to have Plaintiffs arrested without probable cause or warrant, as well as other acts of intimidation.

73. The Defendant-Officers conspired and acted together to have Plaintiffs unlawfully arrested in violation of Plaintiffs' constitutional and civil rights and in deprivation of the privileges, rights, and immunities guaranteed to Plaintiffs by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

74. The Defendant-Officers knowingly and intentionally schemed and worked together in a common plan to harass, oppress and discriminate against Plaintiffs as set forth above and deprive Plaintiffs of their constitutional and civil rights.

75. Plaintiffs suffered harm and injury as a result of Defendants' conspiracy to harass, oppress and discriminate against Plaintiffs and deprive them of their constitutional and civil rights.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against the individual Defendants KARLAS ROBINZINE, ROBERT ARNONY, and TIMOTHY KESKE;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) **Award such other and additional relief that this Honorable Court deems just and equitable.**

## COUNT V
(Unlawful Entry of the Home – 42 U.S.C. § 1983)

76. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

77. Defendant KESKE made entry into Plaintiffs' home without permission, probable cause, a search warrant, or arrest warrant.

78. At the time KESKE made entry into Plaintiffs' home, he was not in "hot pursuit", did not have reason to believe there to be a threat of destruction of evidence, and did not observe Plaintiffs commit or attempt to commit any crimes in his presence.

79. No exigent circumstances existed to justify KESKE's entry into Plaintiffs' home.

80. KESKE's entry into Plaintiffs' home was unlawful and violated the Fourth Amendment of the United States Constitution.

81. The aforementioned actions of KESKE were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against the individual Defendant TIMOTHY KESKE;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VI
(Unlawful Arrest – 42 U.S.C. § 1983)

82. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

83. Defendant KESKE caused Plaintiffs to be placed under arrest without probable cause or a search or arrest warrant.

84. At the time KESKE caused Plaintiffs to be placed under arrest, he was not in "hot pursuit", did not have reason to believe there to be a threat of destruction of evidence, and did not observe Plaintiffs commit or attempt to commit any crimes in his presence.

85. No exigent circumstances existed to justify KESKE's arrest of Plaintiffs.

86. The arrests of Plaintiffs were unlawful and violated the Fourth Amendment of the United States Constitution.

87. The aforementioned actions of KESKE were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, Plaintiffs ask that this Honorable Court:

  a) Enter judgment against the individual Defendant TIMOTHY KESKE;
  b) Award Plaintiffs compensatory and punitive damages, as determined at trial;
  c) Award Plaintiffs attorney's fees and costs;
  d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VII
(Excessive Force – 42 U.S.C. § 1983)

88. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

89. Defendant KESKE's actions amounted to an excessive force and unnecessary force onto the Plaintiffs.

90. This conduct violated that Fourth Amendment to the United States Constitution.

91. The aforementioned actions of KESKE were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, Plaintiffs ask that this Honorable Court:

  a) Enter judgment against the individual Defendant TIMOTHY KESKE;
  b) Award Plaintiffs compensatory and punitive damages, as determined at trial;
  c) Award Plaintiffs attorney's fees and costs;
  d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT VIII
(Intentional Infliction of Emotional Distress – State Law)

92. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

93. The Defendant-Officers' conduct was extreme and outrageous, including without limitation, around the clock surveillance of Plaintiffs' residence, stalking Plaintiffs while outside the residence and on roadways, issuing bogus parking tickets to Plaintiffs, inducing the filing, pursuit and prosecution of false police reports and/or criminal complaints and other litigious actions directed against Plaintiffs, taking affirmative actions to have Plaintiffs arrested without probable cause or warrant, as well as other acts of intimidation.

94. The Defendant-Officers either intended to inflict emotional distress upon Plaintiffs when engaging in their conduct, or knew that there was a high probability that such conduct would result in such distress.

95. The Defendant-Officers caused Plaintiffs to suffer severe emotional distress that no reasonable person could be expected to endure.

96. Specifically, Plaintiff VANESSA suffered from severe depression. She also experienced traumatic, debilitating panic attacks. On at least one occasion, she was hospitalized for these attacks.

97. Moreover, VANESSA experiences panic attacks upon common, every day interaction with the police.

98. Furthermore, the experience has substantially and detrimentally affected both Plaintiffs' relationship with DIMTRI.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against the individual Defendants KARLAS ROBINZINE, ROBERT ARNONY, and TIMOTHY KESKE;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IX
(Negligent Infliction of Emotional Distress – State Law)

99. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

100. The Defendant-Officers owed a duty to Plaintiffs to refrain from engaging in conduct in violation of the Plaintiffs' constitutional and civil rights.

101. The Defendant-Officers breached that duty by engaging in certain conduct in violation of Plaintiffs' constitutional and civil rights as set forth in the above claims including, without limitation, around the clock surveillance of Plaintiffs' residence, stalking Plaintiffs while outside the residence and on roadways, issuing bogus parking tickets to Plaintiffs, inducing the filing, pursuit and prosecution of false police reports and/or criminal complaints and other litigious actions directed against Plaintiffs, taking affirmative actions to have Plaintiffs arrested without probable cause or warrant, as well as other acts of intimidation.

102. The Defendant-Officers aforesaid breaches proximately caused injury to Plaintiffs, and it was reasonably foreseeable that such conduct would cause injury to Plaintiffs.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against the individual Defendants KARLAS ROBINZINE, ROBERT ARNONY, and TIMOTHY KESKE;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT X
(Supervisor Liability - 42 U.S.C. § 1983)

103. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

104. Defendant JIM RITZ, as City of Berwyn Chief of Police, maintains a position of authority over the Defendant-Officers and responsible for, under State law and municipal practice of the CITY OF BERWYN, to formulate and oversee policies, practices, and customs of the Berwyn Police Department and for the hiring, screening, training, and supervision of police officers at the department.

105. Upon information and belief, RITZ knew that ROBINZINE was involved in an extra-marital affair with Rubia.

106. Upon information and belief, RITZ knew about the Defendant-Officers above stated conduct that violated Plaintiffs' constitutional and civil rights and facilitated it, approved it, condoned it, or turned a blind eye towards it, and acted knowingly or with deliberate, reckless indifference.

107. RITZ failed to adequately hire, screen, train or supervise the Defendant-Officers to guard against the above stated conduct of the Defendant-Officers that violated Plaintiffs' constitutional and civil rights.

108. RITZ failed to intervene in the above stated conduct of the Defendant-Officers that violated Plaintiffs' constitutional and civil rights.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against the individual Defendant JIM RITZ;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT XI:
(Inadequate Training or Supervision - 42 U.S.C. § 1983)

109. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

110. Defendant, CITY OF BERWYN, has policies, practices and customers in place regarding the screening, training and supervision of members of the Berwyn Police Department.

111. Defendant CITY OF BERWYN's training program was inadequate to train the Defendant-Officers and other members of the Berwyn Police Department to carry out their duties, and/or Defendant CITY OF BERWYN failed to adequately supervise the Defendant-Officers and other members of the Berwyn Police Department.

112. Defendant CITY OF BERWYN's failure to adequately train and/or supervise proximately caused the above-stated violations of Plaintiffs' constitutional and civil rights.

WHEREFORE, Plaintiffs ask that this Honorable Court:

a) Enter judgment against the Municipal Defendant CITY OF BERWYN;

b) Award Plaintiffs compensatory and punitive damages, as determined at trial;

c) Award Plaintiffs attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT XII
(Indemnification Claim pursuant to 745 ILCS 10/9-102)

113. Plaintiffs reallege Paragraphs 1 through 56 as if fully set forth herein.

114. The acts of the Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of employment.

115. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF BERWYN is liable for any judgments in this case arising from the Defendant-Officers' actions.

WHEREFORE, Plaintiffs ask that this Honorable Court order Defendant CITY OF BERWYN to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

## JURY DEMAND

116. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a jury trial.

Respectfully Submitted,

By: /s/ William J Delaney
One of Plaintiffs' Attorneys

William J Delaney
DELANEY LAW, PC
444 N. Wabash, Ave, Ste 300
Chicago, Illinois 60611
(P): (312) 276-0263