**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VANESSA RODRIGUEZ, MANUAL | ) | |
| CAMACHO, DIMITRI DEJESUS, | ) | |
| a Minor, by and through his mother, | ) | |
| VANESSA RODRIGUEZ. | ) | |
| | ) | No. 2016-cv-05106 |
| Plaintiffs, | ) | |
| | ) | Judge |
| vs. | ) | Honorable Gary Feinerman |
| | ) | |
| CITY OF BERWYN, | ) | |
| Berwyn Police Officers | ) | |
| KARLAS ROBINZINE, Star No. 205, | ) | |
| ROBERT ARNONY, Star No. 218, | ) | |
| TIMOTHY KESKE, Star No. 200, | ) | |
| JIM RITZ, Chief of Police, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS COMBINED BRIEF RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

NOW COME, Plaintiffs, Vanessa Rodriguez, Manual Camacho, Dimitri DeJesus and in joint response to Defendants' City of Berwyn, Karlas Robinzine, Robert Arnony, Timothy Keske and Jim Ritz's, Motions for Summary Judgment, states as follows:

I.      LEGAL STANDARD

Summary judgment is appropriate only where the pleadings, affidavits and responses to discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). In determining whether there is a genuine issue of material fact, the record is

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 1 of 30

viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A material fact is "one that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. Credibility determinations, weighing the evidence, and drawing legitimate inferences from the facts are jury functions, not those of the judge . . . *Id.* at 255. (emphasis added) "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn" in the nonmovant's favor. Id. It is reversible error to rely on a defense-favorable version of the facts over that offered by the nonmovant. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998). While the court must review the record as a whole, it must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products. Inc.*, 530 U.S. 133, 151 (2000).

"At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, et al., 423 F.3d 763, 773 (7th Cir. 2005) (reversing summary judgment in favor of officers when a genuine issue of material fact existed as to whether the force applied to subdue the suspect was excessive and could be inferred by a jury by circumstantial evidence).

The Defendants have relied on one version of facts in support of their Motion for Summary Judgment, but the testimony of the witnesses and parties conflict, leaving questions of fact and determinations of credibility to be decided by a jury. "The fact that available eyewitnesses support the defendants' account of things does not preclude the possibility of

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 2 of 30

genuine factual questions. The sheer number of witnesses mustered by each side is not a relevant consideration..." *Abdullahi*, 423 F.3d at 772. "[M]edical evidence and other circumstantial evidence can be sufficient to create triable issues of fact in excessive force cases." *Id.*

II.     ARGUMENT

**1.  Issues Of Fact Compel The Denial Of Defendants' Request For Summary Judgment On Plaintiffs' Equal Protection Claim**

Plaintiffs have alleged equal protection violations based upon the unequal application of law to them in violation of the Fourteenth Amendment, thereby making them a "class of one." The fact of the matter is, Plaintiffs have sufficiently plead a "class-of-one" violation, and Defendants' motions must be denied. Indeed, a plaintiff succeeds on a class-of-one claim by demonstrating that he (a) has been intentionally treated differently from others similarly situated; and (b) there is no rational basis for the difference in treatment *or* the cause of the differential treatment is a totally illegitimate animus toward plaintiffs. *Maulding Development, LLC. v. City of Springfield, Illinois*, 453 F.3d 967, 970 (7th Cir. 2006).

The Seventh Circuit has held that class-of-one claims can be brought based on allegations of the irrational or malicious application of law enforcement powers. See *Hanes v. Zurich*, 578 F.3d 491, 495 (7th Cir. 2009). "Although the police are necessarily afforded wide discretion in performing their duties, that discretion does not extend to discriminating against or harassing people." *Geinosky v. City of Chicago*, 675 F.3d 747 (7th Cir. 2012). Nothing will bar a properly pled class-of-one equal protection claim in this context. *Id.*

Plaintiffs have properly pled their class-of-one equal protection claim because they allege that the Defendant Officers intentionally treated them differently from other individuals, by

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 3 of 30

singling them out for campaign of harassment, culminating in Plaintiffs' unlawful arrests, solely on the basis of illegitimate animus. (**Complaint ¶¶ 58-60.**)

### A. Plaintiffs Are Not Required To Plead Comparators In Their Complaint

Defendants argue that Plaintiffs' claim for equal protection must fail because the Plaintiffs' Complaint fails to identify a comparator. Here, Plaintiffs have alleged that the residents of Berwyn are similarly situated. They are subject to the City's rules and taxes and were not subject to arrest and criminal charges based upon the Defendants' scheme to have them arrested to impress the mistress of one of the officers.

Furthermore, recent cases have made clear that similarly situated comparators are not always required and that some cases present circumstances where disparate treatment is easily demonstrated but similarly situated individuals are hard to find. *Brunson v. Murray*, 843 F.3d 698, 706 (7th Cir. 2016) (holding that Plaintiff sufficiently offered evidence to avoid summary judgment without the requirement of a comparator because plaintiff showed there was no rational and legitimate basis to single plaintiff out for discriminatory treatment). This is such a case. When the pattern of defendants' conduct toward plaintiffs demonstrates on its own the officers' improper discriminatory purpose and the facts so clearly suggest harassment by public officials that has no conceivable legitimate purpose the plaintiff is not required to identify competitors. *Id.*

### B. Lack of Rational Basis is not a Necessary Pleading Requirement When Animus Is Shown

A clear showing of animus, absent a robust comparison to a similarly situated individual, may sustain a class-of-one equal protection claim. *Swanson v. City of Chetek*, 719 F.3d 780, 783

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

(7th Cir. 2013). Plaintiffs do not need to show that they were treated differently than others similarly situated "when common sense indicates that they must have been." See *Geinosky*, 675 F.3d at 745-48 (finding plaintiff could proceed on class-of-one claim without comparator where officers from single police unit allegedly issued 24 bogus parking tickets over the course of 14 months because "[r]eason and common sense provided no answer to why [the plaintiff] was targeted that could be considered a legitimate exercise of policy discretion").

Here, as in *Geinosky* and *Swanson*, the pattern and nature of Defendant Officers' conduct is sufficient evidence of illegitimate animus and improper discriminatory purpose to save Plaintiffs' claim from summary judgment. Evidence of Defendant Robinzine's illegitimate animus includes both "direct" and "circumstantial" evidence, which create a genuine issue of material fact as to this element as well. This personal animus evidence includes:

(1) *Direct Evidence/Admission of Illegitimate Animus*. In February of 2014 Margarita Rodriguez, Plaintiff Rodriguez's mother accused her of burglarizing a safe in her home. Plaintiffs' Statement of Facts ("PSOF") ¶ 1. Defendant Robinzine was at the time involved in an extra marital affair with Rubia and views himself as her protector. PSOF ¶2. Defendant Robinzine had also had person items stolen from the safe for which he blamed Plaintiff Rodriguez, "every time I see her, I just want to get out of the car and say, 'where's my shit at?'" PSOF ¶ 3.

(2) *Motive for Animus*. Rubia promised Defendant Robinzine that once the Plaintiffs were out of the picture they would be able to work on getting together. PSOF ¶ 4.

(3) *July 2014 Investigation.* In violation of Berwyn Police Department (BPD) Rules Defendant Robinzine injected himself into the criminal investigation involving damages

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

to his girlfriend's property and assured her that Camacho would be arrested soon. PSOF ¶5. Defendants Robinzine and Arnony exchanged text messages during this time and Arnony could not testify what those text messages were relating to. PSOF ¶ 6.

(4) *November Retaliation*. On November 13, 2014, Defendant Arnony sent a department email advising that Camacho was to be felony reviewed despite the fact that his September 1, 2014 Supplemental Report confirmed that the damages to Rubia's vehicle totaled only $413.00, allowing for only a conviction of a misdemeanor. PSOF ¶7. The same email advised that Plaintiff Rodriguez was to be arrested for assault against Rubia, but no warrant was ever issued no was the alleged assault included in the January 2, 2015 Premise Watch. PSOF ¶8.

(5) *January 5, 2015 Arrests of Plaintiffs*. Defendants' illegitimate animus is further evidence by Defendant Keske's January 5, 2015 unconstitutional arrests of Plaintiffs. There were no arrest warrants for Plaintiffs and the January 2, 2015 Premise Watch only allowed for Plaintiff Camacho to be stopped and questioned regarding the criminal damage allegation. PSOF ¶ 9-10

Based on the foregoing and contrary to Defendants' claims, there is ample evidence to create a genuine issue of material fact as to the Defendant Officers' illegitimate animus towards Plaintiffs. Accordingly, this Court should deny Defendants' Summary Judgment Motions.

**2. Issues Of Fact Compel The Denial Of Defendants' Request For Summary Judgment On Plaintiffs' Substantive Due Process Claim**

The Seventh Circuit has articulated that a plaintiff has stated a claim for a violation of substantive due process when he demonstrates "misconduct that a reasonable person would find

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 6 of 30

so beyond the norm of proper police procedure as to shock the conscience, and that is calculated to induce not merely momentary fear or anxiety, but severe mental suffering, in the plaintiff." *Barnhill v. Doiron*, 958 F.2d 200 (7th Cir. 1992).

Regarding the "shocks the conscience" inquiry, this brand of substantive due process is concerned with preventing government officials from "abusing their power or employing it as an instrument of oppression." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 848. "The sine qua non of liability" in these cases is "a purpose to cause harm." *Schaefer v. Goch*, 153 F.3d 793, 797-8 (7th Cir. 1998) (citing *Lewis*, 523 U.S. at 846-47).

Despite this high standard of shocking the conscience, dismissal of Plaintiffs' substantive due process claim is inappropriate because what constitutes egregious conduct shocking to the conscience is an issue of fact and not law. The Seventh Circuit stated, in *King v. East St. Louis School Dist. 189*, 496 F.3df 812 (7th Cir. 2007), that "[t]he inquiry into whether official conduct shocks the conscience in a given case is a necessarily fact-bound inquiry." *Id*. at 818; see also *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998) (finding that the issue of what conduct offends substantive due process should not be considered a question of law).

Plaintiffs' Complaint, all reasonable inferences drawn therefrom, and facts drawn out in discovery present sufficient grounds for a jury to determine that Plaintiffs were subject to egregious conduct that shocks the conscience. Plaintiffs' claim of a substantive due process violation in the present case is based on a pattern, involving multiple government officials over an extended period of time, of willful harassment of plaintiffs. The violation of plaintiffs' civil

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 7 of 30

rights is based on the use of governmental powers, serving no legitimate purpose, that resulted in the intentional infringement of plaintiff's right to be free from unwarranted and unlawful intrusion into their life. Courts clearly do recognize a substantive due process claim where an individual is deprived of "rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746, 95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987). Plaintiffs have a constitutional right to be free from harassment directed towards them out of sheer malice. *Cvicker v. Meyer*, No. 05-C-0576, 2007 U.S. Dist. LEXIS 19816, at *49 (E.D. Wis. Mar. 20, 2007).

As outlined in the Statement of Facts, Plaintiffs have alleged that the Defendant Officers engaged in and/or orchestrated harassing conduct directed at the Plaintiffs. Following Plaintiffs' unlawful arrests, the Defendant Officers would attend the Plaintiffs' court hearings and smile and wave at them throughout. PSOF ¶12. Plaintiffs have spotted police cars stationed at the end of their block on near a dozen occasions where none were seen before. PSOF ¶14. Plaintiff Camacho has been pulled over by Berwyn police on numerous occasions and then released without reason. PSOF ¶15. Both Plaintiffs have witnessed Berwyn police cars circling a park they frequent, and one officer make contact one evening remarking in an unusual manner they shouldn't be there. PSOF ¶16. Over a three-day period, Camacho received 15 parking tickets. PSOF ¶ 13, 17. These asinine tickets consisted of street cleaning tickets on non-street cleaning days and Plaintiff Camacho found a ticket for running a stop sign placed on his vehicle as it sat in front of his residence. ¶18. Plaintiffs have witnessed Defendant Keske drive past their residence on numerous occasions once he followed Camacho home. PSOF ¶19.

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 8 of 30

### 3. Issues Of Fact Compel The Denial Of Defendants' Request For Summary Judgment On Plaintiffs' 1983 Civil Conspiracy Claim

It is agreed that in order to state § 1983 civil conspiracy claim, a plaintiff must allege: (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). However, it is not agreed that a conspiracy claim has not been shown. The character and effect of an alleged conspiracy are determined only by analyzing the activities in question as a whole. *Continental Ore Co. v. Union Carbide*, 370 U.S. 690, 699 (1962). Courts examining civil conspiracy claims "need not affirmatively find that a conspiracy exists, but merely that there are factual questions concerning such a conspiracy in order to deny the motions for summary judgment." *American Dermatologists' Medical Group, Inc. v. Collagen Corp.*, 595 F. Supp. 79, 81 n.1 (N.D. Ill. 1984).

With respect to the requirements for § 1983 civil conspiracy the Defendants argue there has been no "plan" demonstrated to establish a conspiracy. Plaintiffs have identified specific acts by each defendant to show a plan. Plaintiffs have also produced material facts that show the acts in furtherance of the plan. It has often been noted that "[b]ecause conspiracies are often carried out clandestinely and direct evidence is rarely available," the law allows plaintiffs to "use circumstantial evidence to establish a conspiracy," as long as that evidence is not "speculative." *Beaman*, 776 F.3d at 511. Thus, in some situations, a jury may reasonably infer that the circumstances in which the alleged constitutional deprivation occurred could only have arisen by means of conspiracy. *Collier v. City of Chicago*, No. 14 C 2157, 2015 U.S. Dist. LEXIS 113336, at *30 (N.D. Ill. Aug. 26, 2015).

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 9 of 30

For instance, the Seventh Circuit recently concluded that the "[r]eceipt of 24 bogus parking tickets from several officers in one police department"—some of which indicated that plaintiff's car was parked in two places at once—made it a "challenge to imagine a scenario in which that harassment would not have been the product of a conspiracy." *Geinosky*, 675 F.3d at 749. See *Hill v. City of Harvey*, 2018 U.S. Dist. LEXIS 718, 2018 WL 278720, at *5 (N.D. Ill. Jan. 3, 2018) (holding that conspiracy count was sufficiently pled where it contained allegations that defendants had conversations wherein one told the other that "they intended to tie the alleged crime" to the plaintiff and "if they couldn't make the attempted murder charge against [plaintiff] stick, the would 'get' [him] on something else").

A reasonable inference of this sort may be drawn from the circumstances alleged by the Plaintiffs. Plaintiffs have presented substantial evidence from which a jury could find that the Defendant Officers acted in combination. Robinzine inserted himself into the criminal investigations surrounding complaints made by then girlfriend Rubia Rodriguez. Robinzine collaborated with Arnony in obtaining evidence in the criminal damage investigation. From there the investigation took some odd turns. On November 13, 2014, Defendant Arnony sent a department email advising that Camacho was to be felony reviewed despite the fact that his September 1, 2014 Supplemental Report confirmed that the damages to Rubia's vehicle totaled only $413.00, allowing for only a conviction of a misdemeanor. PSOF ¶20. The same email advised that Plaintiff Rodriguez was to be arrested for assault against Rubia, but no warrant was ever issued neither was the alleged assault included in the January 2, 2015 Premise Watch. PSOF ¶21.

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 10 of 30

**4. Issues Of Fact Compel The Denial Of Defendant Keske's Request For Summary Judgment On Plaintiffs' Unlawful Entry Of Home Claim**

The legitimacy of the entry to the residence is not something that defendants can wash away with their reliance on cases where the entry was indeed legitimate. The circumstances which justified the interference in the first place should never have reached the levels of police involvement that occurred here. Absent exigent circumstances or proper consent, the police may not enter an individual's home without a warrant even if probable cause exists to support an entry to search or arrest. *Payton v. New York*, 445 U.S. 573, 588-89, 100 S. Ct. 1371, 1381, 63 L. Ed. 2d 639 (1980). "[T]he burden is on [Defendants] to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984). The exigent circumstances exception should "rarely be sanctioned" in the context of entry into a home, even with probable cause, when only a minor offense is at issue. *Welsh*, 466 U.S. at 753, 104 S. Ct. at 2099. Moreover, exigent circumstances do not exist when the underlying offense is minor, typically a misdemeanor. *Id*. Whether probable cause or exigent circumstances exist is a question for the jury. *Christopher v. Village of Steger*, 95 C 593, 1996 U.S. Dist. LEXIS 5099, at *1 (N.D. Ill. Apr. 17, 1996).

The Supreme Court recognizes "hot pursuit" as one of "several exigencies that may justify a warrantless search of a home." *Kentucky v. King*, 563 U.S. 452, 460, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011). Thus, "[p]olice officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect." *Id*. The Supreme Court describes "hot pursuit" as the "immediate or continuous pursuit of the [suspect] from the scene of a crime." *Welsh*, 466 U.S. at

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

753 (individual's warrantless arrest in the privacy of his own bedroom for a noncriminal traffic offense could not be justified on the basis of the "hot-pursuit" doctrine since there was no immediate or continuous pursuit of individual from scene of crime).

In this case, Defendant Keske was not in hot pursuit of Plaintiffs when he went to their home on January 5, 2015. Camacho allegedly committed the alleged criminal damage in July 2014. Defendant Keske was dispatched to Plaintiffs residence upon their request to investigate a missing license plate. Defendant Keske claims that the exigent circumstances arose when Camacho allegedly attempted to flee into the house to avoid being arrested on charges of criminal damage to property. However, the record in this case is very clear. There was never a warrant issued for Camacho's arrest for criminal damage to property. Defendant Keske had no probable cause to believe that Camacho had committed criminal damage to property at the time he arrested him. When Keske entered Plaintiffs' home, he was not in hot pursuit of a criminal suspect, he had sufficient time to secure a search warrant if one was needed, and there was no indication that Plaintiff was armed or dangerous. If defendant Keske was not performing an authorized act, plaintiffs could not have been validly arrested for obstructing him. *Biernacki v. Carter*, No. 95 C 1694, 1996 U.S. Dist. LEXIS 18695, at *12-13 (N.D. Ill. Dec. 13, 1996).

**5. Issues Of Fact Compel The Denial Of Defendant Keske's Request For Summary Judgment On Plaintiffs' False Arrest Claim**

   **A. Plaintiffs Are Not Collaterally Estopped From Challenging Probable Cause In Plaintiffs Arrest**

A plaintiff must only show that he was acquitted of the underlying substantive charges to state a claim for false arrest. *Ford v. City of Rockford*, 1991 U.S. Dist. LEXIS 20517, No. 88 C 20323, 1991 WL 352511 *3 (N.D. Ill. Oct. 1, 1991). The defendants argue that Plaintiffs' claims

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 12 of 30

of false arrest are issue precluded, for the issue of probable cause for Plaintiffs arrest was litigated at the January 27, 2016 preliminary hearing. Federal courts recognize the binding effects of state court civil and criminal judgments when determining whether Section 1983 claims are issue precluded. *Allen v. McCurry*, 449 U.S. 90, 103-104, 101 S. Ct. 411, 419, 66 L. Ed. 2d 308 (1980).

Under Illinois law for the doctrine of collateral estoppel a defendant must show that: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication. *Bajwa v. Metropolitan Life Ins. Co.*, 208 Ill. 2d 414, 804 N.E.2d 519, 532, 281 Ill. Dec. 554 (Ill. 2004). Since the doctrine of collateral estoppel is an equitable doctrine, "collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Id*. In Illinois, courts do not give preclusive effect to an issue unless there has been a final judgment on the merits, meaning that the potential for appellate review has been exhausted. *Petty v. City of Chicago*, No. 07 C 7013, 2012 U.S. Dist. LEXIS 3718, at *27 (N.D. Ill. Jan. 12, 2012) (Citing *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113, 499 N.E.2d 1373, 102 Ill. Dec. 360 (1986)).

The defendants' argument for issue preclusion fails for several reasons. First, under Illinois law, the criminal defendant has a right to raise a Fourth Amendment issue on probable cause and to bring a motion to suppress any time before trial. The criminal defendant does not have to raise the issue at the preliminary hearing. *Brown v. McGee*, No. 98 C 7324, 2000 U.S. Dist. LEXIS 9005, at *7 (N.D. Ill. June 21, 2000) (citing 725 ILCS 5/109-3(a)). Second, since

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 13 of 30

the State dismissed the charges against Plaintiffs soon after the preliminary hearing, Plaintiffs never had a full and fair opportunity to litigate the Fourth Amendment issue. Plaintiffs did not have the opportunity to appeal the pre-trial probable cause.

This case is similar to *Whitley v. Seibel*, where the Seventh Circuit held that a probable cause finding made in a summary and cursory criminal preliminary hearing did not estop the criminal defendant from later bringing a Section 1983 claim challenging the integrity of the evidence supporting probable cause. 676 F.2d 245 (7th Cir. 1982). The Seventh Circuit distinguished the preclusionary effects of a preliminary hearing versus a suppression hearing. "[The preliminary hearing] is a relatively summary proceeding, designed only to reach an interim decision in the process of bringing a defendant to trial. The suspect has no right to discover what is in the prosecutor's arsenal, or to appeal the finding of probable cause . . . We doubt that [issue preclusion] would ever be appropriate solely on the basis of a preliminary hearing." *Whitley*, 676 F.2d at 249-50.

**B. There Was No Probable Cause To Arrest Defendants**

Whether an officer had probable cause to make an arrest generally will present a question for the jury, although the court can decide it when the material facts are not disputed. *Jones by Jones v. Webb*, 45 F.3d 178, 182 (7th Cir. 1995). Probable cause can be found as a matter of law, however, only when the facts permit but one conclusion-that is, "only when no reasonable jury could find that the officer[] did not have probable cause" to make an arrest. *Id*. Section 1983 claims presenting the question of probable cause are generally inappropriate for disposition on summary judgment...where there is room for a difference of opinion. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989).

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

When evaluating whether probable cause existed, the courts do not view the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Ultimately, however, whether an officer had probable cause to make an arrest generally will present a question for the jury; that is, summary judgment is warranted only when the facts permit but one conclusion, that "no reasonable jury could find that the officer [] did not have probable cause' to make an arrest." *Webb*, 45 F.3d at 182.

Applying these principles to the rather brief factual record, it must be observed that all Keske knew at the time he arrested the Plaintiff Camacho was that the Plaintiff was the "suspected perpetrator" of a car vandalization. A police bulletin identifying both a completed crime and a suspect provides the police with, at most, a reasonable, articulable suspicion justifying only a Terry-type investigative stop so as "to check identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information." *United States v. Celio*, 945 F.2d 180, 183 (7th Cir. 1991) (quoting *United States v. Hensley*, 469 U.S. 221, 232, 105 S. Ct. 675, 682, 83 L. Ed. 2d 604 (1985)); *United States v Longmire*, 761 F.2d 411, 419 (7th Cir. 1985).

On the other hand, police bulletins, such as the one received by Keske do not alone provide probable cause to make a warrantless arrest of the identified suspect absent other information. *Hensley*, 469 U.S. at 232, 105 S. Ct. at 682 ("We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 15 of 30

attempting to obtain further information") (emphasis added) (internal citations omitted); *United States v. Hernandez*, 486 F.2d 614, 616-17 (7th Cir. 1973), cert. denied, 415 U.S. 959, 94 S. Ct. 1488, 39 L. Ed. 2d 574 (1974) (Police bulletin stating defendant's vehicle carried illegal aliens covered by blankets and describing defendant's vehicle by year, model, and license plates justified an investigative stop, but was insufficient to support an arrest or search warrant). See also *Passman v. Blackburn*, 652 F.2d 559, 564-65 (5th Cir. 1981), cert. denied 455 U.S. 1022, 102 S. Ct. 1722, 72 L. Ed. 2d 141 (1982) (Police radio bulletin describing a suspect in an armed robbery was insufficient to support finding of probable cause; suspect had been arrested only twenty-five minutes after the crime); *United States v. LaVallee*, 522 F.2d 211, 214 (2d Cir. 1975) remanded on other grounds, 428 U.S. 907, 96 S. Ct. 3215, 49 L. Ed. 2d 1213 (1976) ("While a radio bulletin may justify immediate investigation, it does not establish probable cause for an arrest and search unless founded on information adequate to support a judicial determination of probable cause.") (citing *Whiteley v. Warden*, 401 U.S. 560, 568, 91 S. Ct. 1031, 1037, 28 L. Ed. 2d 306 (1971)); Cf. *Celio*, 945 F.2d at 183-84 (Probable cause to arrest found from police radio bulletin conveying location and direction of a specific vehicle and its suspected contents; *Hensley* distinguished because knowledge attributed to arresting officer also included intricate details of wiretap surveillance and the more exigent circumstances of a continuing crime rather than a completed crime).

    The defendants also apparently cannot rely upon the so-called "fellow officer" rule of *Whiteley*, 401 U.S. at 568-69, 91 S. Ct. at 1037, to save the arrest from its lack of probable cause. *Whiteley* stands for the proposition that the validity of an arrest by officers relying merely on a bulletin does not turn on whether those relying on the bulletin were aware of the specific facts

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 16 of 30

creating probable cause to arrest, but rather, the focus of inquiry is on whether the officers who issued the bulletin had probable cause to make an arrest. *Hensley*, 469 U.S. at 231, 105 S. Ct. at 681; *Whiteley*, 401 U.S. at 568, 91 S. Ct. at 1037; see also *Gordon v. Degelmann*, 29 F.3d 295, 300 (7th Cir. 1994).

Additionally, there remains disputed facts regarding Keske's authorization to arrest Camacho. He was dispatched to the Plaintiffs' residence to investigate a missing license plate. Under Keske's story he made the decision to arrest Camacho after receiving orders from a supervisor. The Plaintiff claims that Keske said that he spoke to Detective Arnony and that there was a warrant for his arrest. However, both Arnony and Keske admit that a warrant for Camacho's arrest was never issued.

### 6. Issues Of Fact Compel The Denial Of Defendant Keske's Request For Summary Judgment On Plaintiffs' Excessive Force Claim

#### A. There Exist Many Genuine Issues Of Material Fact In Which Evidence Must Be Weighed And Inferences Drawn Therefrom

A police officer's ability to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Nonetheless, the Fourth Amendment prohibits the use of excessive force during the execution of a seizure, and a claim that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure must be evaluated according to the Fourth Amendment's reasonableness standard. *Id.* at 395.

The "reasonableness" of the use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and the officer's subjective

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 17 of 30

good or bad intentions do not enter into the analysis. Graham, 490 U.S. at 396-97. Instead, the factors that a court must consider are: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. In the end, the excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended." *McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir. 1992).

Determining whether a police officer's use of force was reasonable or excessive "requires careful attention to the facts and circumstances of each particular case 'and careful balancing' of an individual's liberty with the government's interest in the application of force." *Graham*, supra, 490 U.S. at 396. Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, "summary judgment is often inappropriate in excessive force cases." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (citing *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009)).

Defendant Keske proclaims that the force used to subdue Camacho was reasonable in light of him attempting to flee from arrest. Plaintiffs have presented evidence to show that no judge had issued a warrant for Camacho's arrest, and Keske did not have probable cause to arrest Camacho for the misdemeanor of criminal damage to property. Therefore, there are at least triable issues of fact as to whether countervailing government issues outweighed the injury to Plaintiff's rights.

Accepting the facts in the light most favorable to Plaintiffs, there is evidence to show that Defendant Keske, without a warrant or probable cause, body slammed Plaintiff Camacho into the

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 18 of 30

foyer of his home and pinned him to the floor with both knees pressed into his chest. PSOF ¶22.

He was then ceremoniously handcuffed, before officers grabbed onto his shoulders and feet,

carried him out of the house, and threw him face down into a police van. . PSOF ¶23. See

*Chelios v. Heavener*, 520 F.3d 678, 689-90 (7th Cir. 2008) (reversing summary judgment for

defendants on excessive force claim and observing that a jury could find that plaintiff's behavior,

while not "docile and cooperative," did not warrant police officer tackling him to the ground

during arrest). Defendant Keske himself admits to slamming Plaintiff Camacho against the foyer

wall before taking him to ground. PSOF ¶ 24

There are genuine issues of fact Plaintiff Rodriguez's claim of excessive force pertaining

to too tight handcuffs. The Seventh Circuit has occasionally recognized valid excessive force

claims based on overly tight handcuffs. *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir.

2006); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1042-43 (7th Cir. 2002) (refusing to loosen

plaintiff's chafing handcuffs constitutes excessive force in a case where plaintiff had violated no

law, was arrested without probable cause, and did not resist).

Here, Plaintiff Rodriguez complained to officers that the cuffs were too tight and asked

that they be loosened. PSOF ¶25. Further, Plaintiff ended up with bruised wrists that lasted

several days. PSOF ¶26. Defendant claims that Plaintiff never once asked for the cuffs to be

loosened or mentioned any pain. The fact that two different stories that emerged from the

incident means that there are genuine issues of fact that only a jury can decide.

Accordingly, Plaintiffs have presented disputed facts such that a reasonable jury could

conclude that the Defendant Keske's actions constitute excessive force.

## A. Injuries Are Not A Factor In Excessive Force Determinations

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 19 of 30

Plaintiffs do not have to prove a certain level of injury to make out a claim for excessive force. *McNair v. Coffey*, 279 F.3d 463, 468 (7th Cir. 2002)(Cudahy, J., concurring)("Physical injury is not a necessary element of a claim for excessive force"). The Seventh Circuit, in an excessive force case, reversed a district court's grant of summary judgment for failing to take all facts in the light most favorable to the plaintiff and in not resolving all evidentiary conflicts in his favor. *Chelios,* 520 F.3d at 693.

However, Plaintiffs do have injuries as a result of Defendant Keske's use of excessive force. As a result of Defendant Keske's excessive force Plaintiff Camacho now experiences daily back and shoulder pain that didn't exist before the incident. PSOF ¶27.  He now has lower back pain around a month. PSOF ¶28. Plaintiff Rodriguez experienced injuries to her wrists from being cuffed too tightly and her arm was over rotated resulting in recurring range of motion problems. PSOF ¶ 29.

Accordingly, Defendants' Motion for Summary Judgment of Plaintiff's excessive force claim must be denied as the Plaintiffs have provided a wealth of specific evidence that would convince a trier of fact to accept their version of events. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). Additionally, the Court must take into account all the evidence presented by the Plaintiff - the totality of the circumstances - in order to evaluate the reasonableness of any force used. *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 475 (7th Cir. 1997).

### 7. Issues Of Fact Compel The Denial Of Defendant City's Request For Summary Judgment On Plaintiffs' Inadequate Training Claim

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 20 of 30

In order to state a claim of official capacity liability under § 1983 for inadequate training and Defendant City of Berwyn, Plaintiffs need to demonstrate: (1) City failed train its officers in a "relevant respect;" (2) "the failure to train evidences a deliberate indifference to citizen's rights;" and (3) a causal connection between the failure to provide adequate training and the constitutional injury. *Palmquist v. Selvik*, 111 F.3d 1332, 1344-45 (7th Cir. 1997).

The seminal case relating to inadequate municipal training policies as a basis for § 1983 liability is *City of Canton v. Harris*, 489 U.S. 378 (1989). In *Canton*, the Supreme Court established that a government may be held liable for a failure to train only when the failure "evidences a 'deliberate indifference' to the rights of the inhabitants...Only where a failure to train reflects a 'deliberate' or 'conscious' choice by municipality-a 'policy' as defined by our prior cases-can a city be liable for such failure under § 1983." 109 S.Ct. 1205 (quoting *Oklahoma v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436 (1985)). The *Canton* court held:

> ...that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need...focus must be on the adequacy of the training program in relation to the tasks that the particular officers must perform...The standard of proof is a severe one...a lesser standard would...engage federal courts in an endless exercise of second-guessing municipal training programs...an exercise...the federal courts are ill-suited to undertake. (109 S.Ct. at 1201-06)

There are two ways to establish deliberate indifference in order for municipal liability to attach: (1) first arises when a municipality "fails to train its employees to handle a recurring situation that presents an obvious potential for a constitutional violation and this failure to train results in constitutional violation;" and (2) the second occurs when a municipality "fails to

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 21 of 30

provide further training after learning of a pattern of constitutional violations by the police."
*Dunn v. City of Elgin*, 347 F.3d 641, 646 (7th Cir. 2003).

The essential question is "would the injury be avoided had the employee been trained under a program that was not deficient in the identified respect?" *Canton*, 109 S.Ct. 1206.

The allegations of the complaint, further fleshed out in discovery, reveal there was at the time of Plaintiffs' policy to arrest persons if there was only probable cause to detain them for questioning. PSOF ¶¶ 11, 31. The assumption that these facts are true (as is the standard) demonstrates that a deliberate and/or conscious choice was made by the BDP to arrest persons where there was only probable cause to detain, not arrest. Further, the enactment of this policy failed allowing the injury to occur.

If officers had been properly trained the injuries to Plaintiffs would have been avoided because Camacho would have only been detained for questioning and not arrested and the arrests that followed would not have occurred.

Plaintiffs single experience of having their constitutional rights violated is enough to maintain a claim against Defendant City. A municipal entity may in fact be held liable even for a single application and/or single incident. *Pembaur v. City of Cincinnati*, 106 S.Ct. 1292, 1298 (1986).

The Supreme Court in *Pembaur* explained,

> no one has ever doubted for instance, that a municipality may be liable under Section 1983 for a single decision by its properly constituted legislative body - whether or not that body had taken similar action in the past or intended to do so in the future - because even a single decision by such a body unquestionably constitutes an act of official government policy.

Id.

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 22 of 30

**8. Summary Judgment Is Inappropriate Regarding Plaintiffs' Claim for Supervisor Liability**

In the context of 42 U.S.C.S. § 1983, in order for a supervisor to be liable, they must be personally responsible for the deprivation of the constitutional right. To show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. The supervisor "must act either knowingly or with deliberate, reckless indifference," and an "affirmative link" must be shown between the supervisor and the constitutional violations committed by his or her subordinates, *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

Unquestionably, a failure to supervise may give rise to Section 1983 liability where that failure disregards known or "obvious" risks of constitutional violations that would flow from a lack of supervision. See, e.g., *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989); *Young*, supra, 396 F. Supp. 2d at 138-39 (stating that supervisory liability may attach "not only where [the supervisor] had actual knowledge of the absence of necessary training, but also where he would have known of the risk of harm but for his willful blindness" (internal quotation omitted)); *Agrawal v. Briley*, 02 C 6807, 2004 WL 1977581, at *12 (N.D. Ill. Aug. 12, 2004) (stating that a supervisor's policy of continuing to delegate responsibility to a subordinate who the supervisor has reason to know if ignoring that responsibility subjects the supervisor to liability because "[t]hat would amount to 'turning a blind eye" or "intentional ignorance"); *Spiegel v. Cortese*, 966 F. Supp. 684, 698 (D. Ill. 1997) ("Viewed in [the plaintiff's] favor, these facts support a finding that [the] direct supervisor, participated in the arrest by

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 23 of 30

approving [the subordinate's] decision with full knowledge of facts that would have led a reasonable officer to investigate further. . . . Told not once, but twice, about circumstances that called the reliability of the complaining witnesses into question and warranted further investigation, [the supervisor] turned a blind eye to the actions of the officer he was supposed to supervise by failing to intervene.").

The chief of police is the individual within the BPD with ultimate authority concerning the training and supervision of criminal investigations, and it was his responsibility through the chain of command to ensure that detective and patrol officers protected the constitutional rights of citizens. Defendant Ritz was the chief of police for the BPD during all relevant times in this case. Defendant Ritz was also responsible for determining the training provided to detective and officers, for ensuring they received adequate training, including in constitutionally adequate law enforcement practices concerning proper involvement with complaining witnesses, and investigations that concern family or significant others, and ensuring that the rules and regulations of the department were sufficiently comprehensive to ensure officers were doing their jobs correctly.

### 9. Summary Judgment Is Inappropriate Regarding Plaintiffs' Damages

#### A. Plaintiffs Damages Flow From The Deprivation Of Their Constitutional Rights

Defendant City asserts that Plaintiffs claimed damages are unforeseeable in the context of their alleged deprivation of constitutional rights and therefore should be foreclosed in summary judgment. Summary judgment on damages is only appropriate under circumstances where the plaintiff fails to produce sufficient evidence of the damages element of its claim. *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 767 (N.D. Ill. 2005). In the context of a Section 1983

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 24 of 30

claim damages from flow from the deprivation of constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 258-259 (1978).

As a result of the Plaintiffs' constitutional violations they suffered damages. Plaintiff Camacho lost his job after being forced to take too many days off to attend court hearings. PSOF ¶32. When Camacho attempted to acquire new employment, he was unsuccessful due to the January 5, 2016 arrest appearing in his background checks. PSOF ¶33. Because Plaintiff Rodriguez was forced to devote time to resolving issue of her false arrest, she suffered damages in that her house went into foreclosure, she lost her car, and suffered lost wages. PSOF ¶34.

As the Seventh Circuit noted in the context of an unlawful arrest, when the unconstitutional act "sets off a chain of indignities inflicted on the hapless victim . . . she is entitled to obtain damages for these indignities whether or not they are independent violations of the Constitution. For they are foreseeable consequences of the illegal arrest, and the ordinary rules of tort causation apply to constitutional tort suits." *Herzog v. Village of Winnetka, Illinois*, 309 F.3d 1041, 1044 (7th Cir. 2002). The amount of recoverable damages is a question of fact for the jury. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 252 (2006); *Everybody Counts, Inc. v. N. Ind. Reg'l Planning Comm'n*, 2006 U.S. Dist. LEXIS 7297 (D. Ind. 2006) (refusing to address issue of money damages where issues of fact exist to bar summary judgment on underlying claims).

### 10. Plaintiffs' Intentional and Negligent Infliction of Emotional Distress Claims Were Continuing Actions By Defendants

Illinois law holds that where a tort involves repeated injury the statute of limitations begins to run from the date of the last in injury or when the tortious acts cease. *Roark v. Macoupin Creek*

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 25 of 30

*Drainage District*, 316 Ill. App. 3d 835, 847, 738 N.E.2d 574, 584 (4th Dist. 2000). Here, Plaintiffs claims are based on Defendants' ongoing actions relating to harassing and arresting defendants, including up to the time the criminal cases were dismissed. Therefore, because this recurring injury caused by the Defendants' continuous actions to harass, then falsely arrest, and then appear in court and further harass Defendants, the statute of limitations runs from the date of the last injury, in this case, the date that the criminal cases were dismissed.

## 11. Defendant Officers Are Not Entitled To Summary Judgment On The Basis Of Qualified Immunity

Plaintiffs' constitutional claims are meritorious. The Defendant Officers knew and appreciated Plaintiffs' rights afforded by the Constitution. Despite this fact, they acted in conscious disregard of these rights when they violated them when they banded together to execute a plan harassment and revenge against Plaintiffs to appease Defendant Robinzine's then mistress turned current wife. When determining if an official is entitled to qualified immunity, courts first ask if the facts show that the official conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 201 (2001); *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007). If they do, we ask whether the violated right was "clearly established" at the time of alleged violation. If so, the official is not entitled to qualified immunity from suit. *Saucier*, 533 U.S. at 201.

For a constitutional right to be clearly established, the state official need only have "reasonable notice . . . that certain conduct violates constitutional rights." *Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009). The salient question is whether the state of the law at the time of the alleged misconduct gave a police officer fair warning that his conduct was

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 26 of 30

unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740-41, 153 L.Ed.2d 666 (2002); and *McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir.2004).

### A. The Defendant Officers Qualified Immunity Defense Fails Because Plaintiffs' Rights Were Clearly Established At All Times In Question

#### a. Equal Protection Is A Clearly Established Right

This Court has previously held that an action depriving a citizen of police protection at the purely personal request of a government official is unrelated to any legitimate state objective, and denies the citizen the right to equal protection of the law. *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000); *Village of Willowbrook v. Olech*, 160 F.3d 386 (7th Cir. 1998).

#### b. Substantive Due Process Is A Clearly Established Right

"[T]he right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action which violated that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

#### c. Civil Conspiracy

Plaintiffs claim that defendants conspired to violate their civil rights and acted in concert to deprive them of their Fourth and Fourteenth Amendment rights. They also allege acts in furtherance of this conspiracy. The constitutional standards applicable to the conduct underlying the alleged conspiracy of defendants has been thoroughly discussed above. If plaintiffs can demonstrate the requisite "meeting of the minds" concerning the unconstitutional conduct, a civil conspiracy under § 1983 will be established. *Blessing v. Kulak*, Nos. 86 C 10227, 86 C 10228,

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 27 of 30

1987 U.S. Dist. LEXIS 5495, at *15-16 (N.D. Ill. June 18, 1987). Accepting plaintiffs'

allegations of conspiracy as true, defendants cannot be immune from suit if the underlying

conduct was unconstitutional. The defendants are not entitled to qualified immunity from the

civil conspiracy alleged.

### d. Freedom From Unlawful Arrest Is A Clearly Established Right

The Seventh Circuit has held that the right to be from unreasonable arrest has been

established since Beck. *Sornberger v. City of Knoxville*, 434 F.3d at 1013 ("The constitutional

right to be free from arrest without probable cause indisputably was established at the time

[Plaintiffs] were arrested.") citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L.Ed.2d 142

(1964). Officer Keske is not entitled to qualified immunity because he had no objectively

reasonable basis to believe the facts alleged in the report were sufficient to establish probable

cause.

### e. Freedom From Unlawful Entry of Home Is A Clearly Established Right

"[P]olice officers may constitutionally arrest an individual in a public place (e.g., outside)

without a warrant, if they have probable cause." *Sparing v. Vill. of Olympia Fields*, 266 F.3d

684, 688 (7th Cir. 2001). However, "searches and seizures inside a home without a warrant are

presumptively unreasonable." *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S. Ct. 2091, 80 L. Ed.

2d 732 (1984) (quoting *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d

639 (1980)). The Fourth Amendment "draw[s] a firm line at the entrance of the house" because

"[t]he physical entry of the home is the chief evil against which the wording of the Fourth

Amendment is directed." Payton, 445 U.S. at 585, 590. Therefore, "police officers may not

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 28 of 30

constitutionally enter a home without a warrant to effectuate an arrest, absent consent or exigent circumstances, even if they have probable cause." *Sparing*, 266 F.3d at 688.

### f.  Freedom From Excessive Force Is A Clearly Established Right

There can be no dispute that the law applicable to Plaintiff's claim of excessive force was clearly established on the date of the incident. *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever"). Referencing a case of excessive force and false arrest, the Seventh Circuit affirmed denial of qualified immunity where disputed facts remained bearing on reasonableness of use of force, including the degree of plaintiff's agitation; the level of threat posed by plaintiff; whether plaintiff made physical contact with officers; and the exact sequence of events leading up to the interaction. *Chelios*, 520 F.3d at 692 (quoting *Clash*, 77 F.3d at 1047). Granting the Defendant qualified immunity necessarily involves deeming his version of events more credible than the Plaintiff's, and this Court cannot make a credibility determination. Wilson v. Williams, 997 F.2d 348, 350 (7th Cir.1993) (reversing grant of summary judgment which turned on credibility determinations).

### B.  Defendant Officer's Violations Of Clearly Established Rights Has Been Shown

Qualified immunity cannot be granted where there are material issues in dispute surrounding the actions that are a constitutional violation. *Morfin v. City of East Chicago*, 349 F.3d 989, 1000 (7th Cir. 2003). Qualified immunity protects police who have violated a constitutional right only when the contours of that right are not sufficiently clear. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673 (7th Cir.2007). "If a plaintiff claims that an arrest was lacking in probable cause and if an officer claims that he or she had such cause, with the issue

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT

Page 29 of 30

having to be resolved in factual terms at trial, the label of qualified immunity is an ill-fitting garment to clothe that inquiry." *Morgan v. Stringer*, 945 F. Supp. 1129, 1131 (N.D. Ill. 1996). See *Gonzale z v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial.").

Generally, the applicability of qualified immunity is a question of law. *White v. Gerardot*, 509 F.3d 829, 832 (7th Cir. 2007). However, because a fact-sensitive examination must be undertaken to determine whether the right claimed to have been violated was clearly established, it is difficult to resolve the issue as a matter of law at the summary judgment stage where there are conflicting versions of events. *Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n.13 (7th Cir. 2003).

WHEREFORE, Plaintiff's respectfully request that this Honorable Court Deny Defendants' Motions for Summary Judgment and set this matter for trial.

Dated: July 31, 2018        By: _/S/ William J. Delaney_____
                               William J. Delaney

Delaney Law, PC
Firm No.: 44350.
444 N. Wabash Ave., Ste. 300
Chicago, Illinois 60611
(312) 276-0263

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Page 30 of 30

PLAINTIFFS' COMBINED BRIEF RESPONSE
IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT