IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VANESSA RODRIGUEZ, MANUAL | ) | |
| CAMACHO, DIMITRI DEJESUS, a Minor, | ) | |
| by and through his mother, | ) | |
| VANESSA RODRIGUEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO.  2016-cv-5106 |
| | ) | |
| vs. | ) | Judge |
| | ) | Honorable Gary Feinerman |
| CITY OF BERWYN, | ) | |
| Berwyn Police Officers | ) | |
| KARLAS ROBINZINE, Star No. 205, | ) | |
| ROBERT ARNONY, Star No. 218, | ) | |
| TIMOTHY KESKE, Star No. 200, | ) | |
| JIM RITZ, Chief of Police, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' CONSOLIDATED JOINT RESPONSE TO PLAINTIFFS' 56.1 STATEMENT

NOW COME, the Defendants, the CITY OF BERWYN, Officers ROBINZINE, ARNONY, KESKE, and Retired Chief RITZ, and as their joint response to Plaintiffs' 56.1 Statement provide:

1.  In February of 2014 Margarita Rodriguez ("Rubia"), Plaintiff Rodriguez's mother accused her of burglarizing a safe in her home.   **Ex. 1 Police Report.**

*Answer:  Objection, lack of foundation and hearsay.  The exhibit attached to assert this fact is a police report with Rubia's statements contained in the police report.  As such it is classic hearsay.  Hearsay is insufficient to defeat summary judgment.  Eisenstadt v. Centel Corp., 113 F.3d 738, 742 (7th Cir. 1997).*

2.  Defendant Robinzine was at the time involved in an extramarital affair with Rubia and views himself as her protector.  **Def. Ex. 4: Robinzine Dep. 124:3-5.**

*Answer:  Objection, immaterial.  Robinzine also testified that no one at the Berwyn Police Department was aware that he was involved in an affair with Vanessa Rodriguez's mother, Rubia and that he did not engage in any conspiracy with the Berwyn Police Department. Plaintiffs admitted that no one at the Berwyn Police Department was aware of the affair in response to Defendants' 56.1 statement.  See Plaintiffs' Resp. to Def. Fact No. 63; Dkt. No. 130. With respect to Defendants' statement of fact about conspiracy, See Def. Fact No. 66, Plaintiffs*

1

*responded: "This is an issue of fact for the jury to decide as the jury will be best able to determine matters of credibility" but failed to identify any evidence that disputed the fact, in violation of Fed. R. Civ. P. 56(e) and LR 56.1(b)(3)(C). Thus, it is deemed admitted by Plaintiffs that no one was aware of the affair and that there was no conspiracy.*

3. Defendant Robinzine had also had person[al] items stolen from the safe for which he blamed Plaintiff Rodriguez, "every time I see her, I just want to get out of the car and say "where's my shit at?" **Def. Ex. 4: Robinzine Dep. 427:19-434:11 and Ex. 2 Text Messages.**

*Answer: Objection, hearsay and lack of foundation. The text messages are not authenticated in violation of Rule 901. Unauthenticated documents are inadmissible hearsay. <u>Martz v. Union Labor Life Ins. Co.</u>, 757 F.2d 135, 138 (7th Cir. 1985). Further, Robinzine testified that he was not sure when the text messages were sent. <u>See</u> Def. Ex. 4; Robinzine Dep. p. 432:18-433:6;438:10-24.*

4. Rubia promised Defendant Robinzine that once the Plaintiffs were out of the picture they would be able to work on getting together. **Def. Ex. 4: Robinzine Dep. 436:2-443:25.**

*Answer: Objection, hearsay and lack of foundation. The text messages are not authenticated in violation of Rule 901. Unauthenticated documents are inadmissible hearsay. <u>Martz v. Union Labor Life Ins. Co.</u>, 757 F.2d 135, 138 (7th Cir. 1985).*

5. In violation of Berwyn Police Department (BPD) Rules Defendant Robinzine injected himself into the criminal investigation involving damages to his girlfriend's property and assured her that Camacho would be arrested soon. ***Id.***

*Answer: Objection, conclusory, lack of foundation and unsupported by the record. Presumably the portion of the transcript that is referred to by "Id." is the portion cited to in No. 4. However, nowhere in that transcript is there reference to the Berwyn Police Department Rules or that he "injected himself into the criminal investigation involving damages to his girlfriend's property."*

6. Defendants' Arnony and Robinzine exchanged a number of texts during the same period of time as the text messages in Exhibit 2 and Arnony was unable to testify as to the contents of those text messages. **Def. Ex. 2 Arnony Dep. 86:14-87:24, Def. Ex. 4, Robinzine Dep.**

*Answer: Objection, lack of foundation, immaterial and unsupported by the record. With respect to the citation to the transcript of Robinzine's deposition, there is no page number or other identifying information in Plaintiffs' Supplemental Statement of Facts, so it is unclear what is being referenced in support. With respect to Detective Arnony's testimony, the question asked of him was if he exchanged texts and emails with Robinzine from the years of 2013-2014. He answered yes but could not recall what the texts and emails were about. Nowhere in Exhibit 2 or in either parties' statement of facts is there any kind of foundation laid as to when these alleged texts between Robinzine and Vanessa Rodriguez's mom Rubia Rodriguez were exchanged so as to establish that this was "during the same period of time."*

7.   On November 13, 2014, Defendant Arnony sent a department email advising the Camacho was to be felony reviewed despite the fact that his September 1, 2014 Supplemental Report confirmed that the damages to Rubia's vehicle totaled only $413.00, allowing for only a conviction of a misdemeanor.  **Ex. 3, Email.**

*Answer:  Objection, lack of foundation, argumentative, and unsupported by the record to the extent that this fact asserts that the threshold for a felony criminal damage to property was above $413.00.  In 2014, the threshold amount for a criminal damage to property case to be charged as a felony was only $300.00 not the current amount of $500.00 amount it is today.  See 2014 version of 720 ILCS 5/21-1(d)(1)B) attached as Exhibit A to this response.  Nevertheless and without waiving said objections, the contents of Arnony's email and that it was sent is undisputed.*

8.   The same email advised that Plaintiff Rodriguez was to be arrested for assault against Rubia, but no warrant was ever issued no[r] was the alleged assault included in the January 2, 2015 Premise Watch.

*Answer:  Undisputed.*

9.   A Premise Watch is defined as when someone [] asks the police to keep an eye on their residence.  **Def. Ex. 3: Keske Dep. 32:5-13.**

*Answer:  Objection, immaterial.  It is immaterial as to what a premise watch is defined as because as testified to by the Chief of Detectives, Commander Scardamaglia, the memo in question in this case could be interpreted as a premise watch or an investigative alert flyer.  See Dep. of Scardamaglia p.75:14-24 attached as Exhibit B to this response.  Further, nevertheless and without waiving said objection, a premise watch can be issued for a multitude of reasons. See Dep. of Ortiz, Def. Ex. 9 to SOF, p. 121:14-24.*

10. There were no arrest warrants for Plaintiffs at the time of his arrest.  **Def. Ex. 3 Keske Dep. 92:5-17.**

*Answer:  Undisputed.*

11. Keske states he interpreted the language there are no warrants for Camacho to mean that he should arrest Camacho.  **Def. Ex. 3: Keske 92:25-93:4.**

*Answer:  Objection, misstates the record. De v. City of Chicago, 912 F. Supp.2d 709, 712-713 (N.D. Ill. 2012)(finding that the assertion of facts not supported by or misstating the record should be disregarded).  Specifically, the record reflects that Keske interpreted the language in the premise watch memo that stated "probable cause does exist to detain Camacho for questioning" in relation to a complaint of criminal damage to property to mean that he should arrest Camacho.  Defs. SOF ¶40.*

12. Following Plaintiffs' unlawful arrests, the Defendant officers would attend the Plaintiffs' court hearings and smile and wave at them throughout. **Def. Ex. 11 Rodriguez Dep. 139:3-18; Def. Ex. 12 Camacho Dep. 242:1-18.**

*Answer: Objection, argumentative and misstates the record. The word "unlawful" is argumentative and a legal conclusion and should be stricken. With respect to misstatement of the record, the record cited to only supports that Keske (not all the Defendant officers) would smile and wave when he saw them at the beginning of court and smile during court but not continuously wave. With respect to this specific fact, which the record supports, that fact is undisputed.*

13. Rodriguez and Camacho received numerous parking tickets for no apparent reason. **Def. Ex. 12: Camacho Dep. 193:5-195:6, Def. Ex. 11: Rodriguez Dep. 55:13-58:16.**

*Answer: Objection, conclusory, unsupported by the record, and in direct contradiction to Plaintiffs' admission to Defendants' Statement of Fact No. 49. See Dkt. No. 130. Conclusory allegations are forbidden under LR 56.1. See Roger Whitemore's Auto Servs., Inc. v. Lake Cnty., Ill., 424 F.3d 659, 674 (7th Cir. 2005). Under LR 56.1, factual assertions must be specific, concrete and particularized. Smith v. Lamz, 321 F.3d 680, 682 (7th Cir. 2003); See also Drake v. Minnesota Min. & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998)(holding that district court was correct in striking conclusory statement that said: "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee." at summary judgment).*

14. Plaintiffs have spotted police cars stationed at the end of their block on near a dozen occasions where none were seen before. **Def. Ex. 11: Rodriguez Dep. 222:1-18, Def. Ex. 12: Camacho Dep. 189:2-6.**

*Answer: Objection, conclusory, unsupported by the record, and in direct contradiction to Plaintiffs' admission to Defendants' Statement of Fact No. 50-53. See Dkt. No. 130. Conclusory allegations are forbidden under LR 56.1. See Roger Whitemore's Auto Servs., Inc. v. Lake Cnty., Ill., 424 F.3d 659, 674 (7th Cir. 2005). Under LR 56.1, factual assertions must be specific, concrete and particularized. Smith v. Lamz, 321 F.3d 680, 682 (7th Cir. 2003); See also Drake v. Minnesota Min. & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998)(holding that district court was correct in striking conclusory statement that said: "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee." at summary judgment).*

15. Plaintiff Camacho has been pulled over by Berwyn police on numerous occasions and then released without reason. **Def. Ex. 12: Camacho Dep. 190:21-191:15, 274:6-276:2; 281:7-284:2.**

*Answer: Objection, conclusory, unsupported by the record, and in direct contradiction to Plaintiffs' admission to Defendants' Statement of Fact No. 50-52. See Dkt. No. 130. Conclusory allegations are forbidden under LR 56.1. See Roger Whitemore's Auto Servs., Inc. v. Lake Cnty., Ill., 424 F.3d 659, 674 (7th Cir. 2005). Under LR 56.1, factual assertions must be specific, concrete and particularized. Smith v. Lamz, 321 F.3d 680, 682 (7th Cir. 2003); See also Drake v. Minnesota Min. & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998)(holding that district court was correct in striking conclusory statement that said: "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee." at summary judgment).*

16. Both Plaintiffs have witnessed Berwyn police cars circling a park they frequent, and one officer ma[d]e contact one evening remarking in an unusual manner they shouldn't be there. **Def. Ex. 12: Camacho Dep. 189:2-6, 191:11-15; Def. Ex. 11: Rodriguez Dep. 222:1-18.**

*Answer: Objection, conclusory, unsupported by the record, and argumentative. Argumentative with respect to the use of the word "unusual." Conclusory allegations are forbidden under LR 56.1. See Roger Whitemore's Auto Servs., Inc. v. Lake Cnty., Ill., 424 F.3d 659, 674 (7th Cir. 2005). Under LR 56.1, factual assertions must be specific, concrete and particularized. Smith v. Lamz, 321 F.3d 680, 682 (7th Cir. 2003); See also Drake v. Minnesota Min. & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998)(holding that district court was correct in striking conclusory statement that said: "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee." at summary judgment).*

17. Over a three-day period, Camacho received 15 parking tickets. **Def. Ex. 12: Camacho Dep. 193:5-16.**

*Answer: Objection, conclusory, unsupported by the record, and in direct contradiction to Plaintiffs' admission in response to Defendants' Statement of Fact No. 49 of only receiving 8-9 parking tickets. See Dkt. No. 130. Conclusory allegations are forbidden under LR 56.1. See Roger Whitemore's Auto Servs., Inc. v. Lake Cnty., Ill., 424 F.3d 659, 674 (7th Cir. 2005). Under LR 56.1, factual assertions must be specific, concrete and particularized. Smith v. Lamz, 321 F.3d 680, 682 (7th Cir. 2003); See also Drake v. Minnesota Min. & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998)(holding that district court was correct in striking conclusory statement that said: "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee." at summary judgment). Specifically with respect to these tickets, Camacho was asked why he only was able to produce copies of 4 of these alleged "15 parking tickets" (which were not during a "three-day period")*

*and was unable to come up with an explanation.  See Def. Ex. 12: Camacho Dep. p. 270:21-273:6.*

18. These asinine tickets consisted of street cleaning tickets on non-street cleaning days and Plaintiff Camacho found a ticket for running a stop sign placed on his vehicle as it sat in front of his residence.  **Def. Ex. 12: Camacho Dep. 272:11-273:6; 194:19-20.**

*Answer:  Objection, argumentative with respect to the use of the word "asinine."  Defendants further object on the grounds of it being unsupported by the record, conclusory, and in direct contradiction to Plaintiffs' admission to Defendants' Statement of Fact No. 49.  See Dkt. No. 130.*

19. Plaintiffs have witnessed Defendant Keske drive past their residence on numerous occasions once he followed Camacho home.  **Def. Ex. 12: Camacho Dep. 260:20-21.**

*Answer:  Objection, immaterial and misstates the record.  De v. City of Chicago, 912 F. Supp.2d 709, 712-13 (N.D. Ill. 2012)(finding that the assertion of facts not supported by or misstating the record should be disregarded).  Specifically, the record only reflects that Camacho testified that he saw Keske drive past Plaintiffs' house twice and that Keske once followed him home.*

20. On November 12, 2014, Defendant Arnony sent a department email advising that Camacho was to be felony reviewed despite the fact that his September 1, 2014 Supplemental Report confirmed that the damages to Rubia's vehicle totaled only $413.00, allowing for only a conviction of a misdemeanor.  **Ex. 3.**

*Answer: Objection, lack of foundation and unsupported by the record.  In 2014, the threshold amount for a criminal damage to property case to be charged as a felony was only $300.00 not the current amount of $500.00 it is today.  See 2014 version of 720 ILCS 5/21-1(d)(1)B) attached as Exhibit A to this response.*

21. The same email advised that Plaintiff Rodriguez was to be arrested for assault against Rubia, but no warrant was ever issued neither was the alleged assault included in the January 2, 2015 Premise Watch.  **Id.**

*Answer:  Objection as unsupported by the record, as there is nothing in Ex. 3 that identifies it as a "premise watch."  Undisputed as to the remainder of the fact with respect to the contents of the email.*

22. Defendant Keske, without a warrant or probable cause, body slammed Plaintiff Camacho into the foyer of his home and pinned him to the floor with both knees pressed into his chest.  **Def. Ex. 12: Camacho Dep. 176: 14-17; 179:2-9; 230:12-17. 250:7-8, Ex. 4. Arrest Picture.**

*Answer:  Objection, argumentative and misstates the record.  Plaintiffs' assertion that Keske acted without probable cause is improper under LR 56.1 because it is conclusory and argumentative.  See De, 912 F. Supp.2d at 712-713 ("vague, argumentative, immaterial or*

*conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rule 56.1). Additionally, Camacho did not testify that Keske "body slammed" him but instead testified that Keske "football tackled" him. Furthermore, there is nothing in Exhibit 4 that supports the claims of this paragraph.*

23. He was then unceremoniously handcuffed, before officers grabbed onto his shoulders and feet, carried him out of the house, and threw him face down into a police van. **Def. Ex. 12: Camacho Dep. 182:13-17, 249:17-18.**

*Answer: Objection, argumentative with respect to "unceremoniously" and immaterial with respect to being handcuffed, grabbed on his shoulders and feet, carried out of the house, and thrown face down in a police van. The only claim for excessive force that Plaintiffs have is against Officer Keske. See Compl. Dkt. No. 1, Count VII, ¶¶ 88-91. Further, there are no allegations or evidence that has been cited to by Plaintiffs that supports the theory that any of the other named individual defendant officers were on scene for the arrest of Rodriguez. Camacho testified in his deposition that, other than being handcuffed, none of these actions were by Keske. See Def. Ex. 12, Camacho Dep. p. 182.*

24. Defendant Keske himself admits to slamming Plaintiff Camacho against the foyer wall before taking him to the ground. **Def. Ex. 3: Keske Dep. 60:16-20.**

*Answer: Objection, argumentative and unsupported by the record. See De, 912 F. Supp.2d at 712-713 (finding that the assertion of facts not supported by the record should be disregarded). Keske's testimony in the cited to portion of the transcript is: "we grabbed [Camacho], he went up against the wall, and then we all went to the ground."*

25. Plaintiff Rodriguez complained to officers that the cuffs were too tight and asked that they be loosened. **Def. Ex. 11: Rodriguez Dep. 134:15-19, 135:18-22.**

*Answer: Objection, unsupported by the record with respect to the assertion that Rodriguez "asked that they be loosened" and immaterial that she complained that the cuffs were too tight because Rodriguez further testified that although Officer Keske was the officer that handcuffed her, she did not tell him that the handcuffs were too tight, and he is the only officer against whom excessive force is alleged. See Compl. Dkt. No. 1, Count VII, ¶¶ 88-91; See Def. Ex. 11: Rodriguez Dep. 136:4-136:6. Further, there are no allegations or evidence that has been cited to by Plaintiffs that supports the theory that any of the other named individual defendant officers were on scene for the arrest of Rodriguez.*

26. Further, Rodriguez ended up with bruised wrists that lasted several days. **Def. Ex. 11: Rodriguez Dep. 134:15-19.**

*Answer: Objection, unsupported by the record that Rodriguez had bruised wrists that lasted several days and immaterial with respect to the bruised wrists. It is immaterial because she never told Officer Keske that the handcuffs were too tight and he is the only officer that she has alleged used excessive force. See Compl. Dkt. No. 1, Count VII, ¶¶ 88-91; Def. Ex. 11: Rodriguez Dep. 136:4-6. Further, there are no allegations or evidence that has been cited to by*

*Plaintiffs that supports the theory that any of the other named individual defendant officers were on scene for the arrest of Rodriguez.*

27. Plaintiffs do have injuries as a result of Defendant Keske's use of excessive force. As a result of Defendant Keske's excessive force Plaintiff Camacho now experiences daily back and shoulder pain that didn't exist before the incident. **Def. Ex. 12: Camacho Dep. 249:16-250:9.**

*Answer: Objection, argumentative, immaterial and unsupported by the record. First, Plaintiffs' assertion that Keske used "excessive force" is conclusory and argumentative. Thus, it should be stricken and not considered by the Court. Second, Camacho's assertion that he "experiences daily back and shoulder pain" is not supported by the record. Third, Camacho's assertion that he has shoulder pain is immaterial as he attributed this shoulder pain to unnamed officers – not Keske – "pulling my body up from when they hog tied me." See Camacho Dep. 182:13-17; 249:19-22; See also Defs. SOF ¶44. It is immaterial because Officer Keske is the only officer that excessive force is alleged against in the Complaint. See Compl. Dkt. No. 1, Count VII, ¶¶ 88-91. Further, there are no allegations or evidence that has been cited to by Plaintiffs that supports the theory that any of the other named individual defendant officers were on scene for the arrest of Rodriguez. Lastly, it is undisputed that Camacho testified that he has a "little discomfort in the back, lower back" that occurs "[m]aybe like twice in a month," which he attributes to Keske's weight being on him during his arrest. See Camacho Dep. 250:4-10; 251:6-7.*

28. He now has lower back pain around a month. **Def. Ex. 12: Camacho Dep. 249:16-250:9.**

*Answer: Objection, unsupported by the record. Camacho's testified that he has lower back pain "[m]aybe like twice in a month." See Def. Ex. 12; Camacho Dep. 251:6-7.*

29. Plaintiff Rodriguez experienced injuries to her wrist from being cuffed too tightly and her arm was over rotated resulting in recurring range of motion problems. **Def. Ex. 11: Rodriguez Dep. 134:20-23.**

*Answer: Objection, unsupported by the record and immaterial. It is immaterial because Rodriguez never told Keske that her handcuffs were too tight. It is unsupported by the record because no doctor has attributed any of Rodriguez's claimed difficulties with her arm to her being handcuffed. See Def. Ex. 11; Rodriguez dep. 135:3-16.*

30. Defendant Arnony threatened to arrest Camacho and go to his job and humiliate him. **Def. Ex. 12: Camacho Dep. 130:7-131:3.**

*Answer: Objection, unsupported by the record. The portion of the record cited is Camacho's deposition transcript, in which Camacho himself testifies that Detective Arnony spoke to Camacho on the phone and asked him to come down to the police station and turn himself in, that Detective Arnony did not want to have to issue a warrant for his arrest and have people come to Camacho's work to arrest him, humiliate him and put him in handcuffs. See Def. Ex. 12, Camacho Dep. 130:17-131:16.*

31. At the time of Plaintiffs' arrest a policy to arrest people if there was probable cause to detain for questioning. **Def. Ex. 3: Keske Dep. Def. Ex. 2: 181:15-18; Def. Ex. 9 : Ortiz 137:20-138:9.**

*Answer: Objection, unsupported by the record and unclear as to what Plaintiffs are trying to assert by this statement as there is clearly a typo in the way this statement was drafted and the citations to the record. With respect to "Def. Ex. 3" of Keske's deposition, there are no page numbers identified as to what part of Keske's deposition support this statement. With respect to the portion of the testimony cited from Detective Arnony "Def. Ex. 2," that portion only has Arnony testifying to the following: "Q.· ·So you just said the sentence, 'I had probable cause,' probable cause to do what? A.· ·Detain, arrest, bring in.··Yes, I had probable cause, sir." With respect to Ortiz, the testimony cited to only states: "I'm asking you with particularity as to Exhibit 6 in front of you -- I'm sorry, Number 7, the email regarding premise watch and detaining to question, with particularity as to that, did Detective Arnony adhere to policy and procedure, as outlined in either the special order or the version in effect of the Berwyn Police Department?A.· ·I believe so, yes. Q.· ·How do you know that? A.· ·Because it says on here that, "Camacho was also wanted by this department pursuant to criminal damage to property complaint 14-07282 At this time, there is no warrant for Camacho.··However, probable cause does exist to detain Camacho for questioning in this matter."*

32. Camacho lost his job after being forced to take too many days off to attend court hearings. **Def. Ex. 12: Camacho Dep. 207:2-208:13.**

*Answer: Objection, conclusory, unsupported by the record, and in contradiction to the direct admission Camacho made in response to Defendants' 56.1 Statement No. 69. See Dkt. No. 130. Conclusory allegations are forbidden under LR 56.1. See Roger Whitemore's Auto Servs., Inc. v. Lake Cnty., Ill., 424 F.3d 659, 674 (7th Cir. 2005). Under LR 56.1, factual assertions must be specific, concrete and particularized. Smith v. Lamz, 321 F.3d 680, 682 (7th Cir. 2003); See also Drake v. Minnesota Min. & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998)(holding that district court was correct in striking conclusory statement that said: "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee." at summary judgment). Camacho has already admitted Defendants' Fact No. 69, which establishes that Camacho was instead fired for no call no show and for not showing up for work on days he did not have a criminal court appearance. He cannot now contradict this with his generic and conclusory statement.*

33. Camacho has been unable to find a permanent position due to his arrest record. **Def. Ex. 12: Camacho Dep. 138:2-14.**

*Answer: Objection, conclusory, unsupported by the record, and in contradiction to the direct admission Camacho made in response to Defendants' 56.1 Statement No. 70. See Dkt. No. 130. Conclusory allegations are forbidden under LR 56.1. See Roger Whitemore's Auto Servs., Inc. v. Lake Cnty., Ill., 424 F.3d 659, 674 (7th Cir. 2005). Under LR 56.1, factual assertions must be specific, concrete and particularized. Smith v. Lamz, 321 F.3d 680, 682 (7th Cir. 2003); See also*

*Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998)(holding that district court was correct in striking conclusory statement that said: "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee." at summary judgment). Camacho already admitted Defendants' Fact No. 70 – which establishes, with specificity, that no company has refused to hire Camacho due to his "arrest record." This generic and conclusory statement does not change things.*

     34. Because Plaintiff Rodriguez was forced to devote time to resolving her issue of her false arrest, she suffered damages in that her house went into foreclosure, she lost her car, and suffered lost wages. **Rodriguez Dep. 10:10-15; 87:4-10; 85:19-86:14.**

*Answer: Objection, conclusory, unsupported by the record, and in contradiction to the direct admission Rodriguez made in response to Defendants' 56.1 Statement No. 71. See Dkt. No. 130. Further, in response to Defendants' 56.1 Statement No. 67 in relation to Rodriguez's job loss, Rodriguez did not provide any evidence to dispute the fact and responded, without support, that Rodriguez "disclosed her financial documents." Thus, pursuant to Fed. R. Civ. P. 56(e) and LR 56.1(b)(3)(C) that fact is deemed admitted. With respect to the conclusory objection, conclusory allegations are forbidden under LR 56.1. See Roger Whitemore's Auto Servs., Inc. v. Lake Cnty., Ill., 424 F.3d 659, 674 (7th Cir. 2005). Under LR 56.1, factual assertions must be specific, concrete and particularized. Smith v. Lamz, 321 F.3d 680, 682 (7th Cir. 2003); See also Drake v. Minnesota Min. & Mfg. Co., 134 F.3d 878, 887 (7th Cir. 1998)(holding that district court was correct in striking conclusory statement that said: "Every time I, or any other African American employee went to Dean Coleman with a problem involving another employee, who was white, Dean Coleman would never conduct an investigation or take any action against that white employee." at summary judgment).*

 

                                                            Respectfully submitted,
                                                            Defendants

                                                            By: */s/ Cynthia S. Grandfield*
                                                                Cynthia S. Grandfield

K. Austin Zimmer
Cynthia S. Grandfield (ARDC No. 6277559)
Joseph A. Giambrone
DEL GALDO LAW GROUP, LLC
(312) 222-7000 (t)
grandfield@dlglawgroup.com
*Please direct all mailings to:*
1441 S. Harlem Avenue
Berwyn, Illinois 60402